CLAYTON E. TURNER#279665    )
                                )
v.                                )         No. 2:05-CV-102
                                )
HOWARD CARLTON, Warden    )

## MEMORANDUM OPINION

Clayton E. Turner, a prisoner in the Northeast Correctional Complex [NECX], brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under several state court convictions. Respondent Howard Carlton, Warden at the NECX, has answered the petition, has submitted copies of petitioner's state court record, and has argued that, for various reasons, none of the grounds offered in petitioner's pleading will support the granting of the writ. [Doc. 5]. Petitioner has filed a reply, maintaining that, indeed, each ground raised in his petition entitles him to habeas corpus relief. [Doc. 9].

## I. **Procedural History**

In 1997, a jury in the Criminal Court for Sullivan County, Tennessee convicted petitioner of rape of a child, incest, and assault by offensive touching. For these offenses, the trial court imposed an effective 31-year sentence (twenty-five years for the rape, a consecutive six years for the incest, and a concurrent six months for the assault). Petitioner was unsuccessful on direct appeal [Add. Nos. 1-5]; in petitioning

for post-conviction relief [Addenda Nos. 6-10]; and in his pursuit of relief under Tennessee's Post-Conviction DNA Analysis Act. [Add. Nos. 11-15]. A prior federal habeas corpus petition, filed during the pendency of the state post-conviction appeal, was dismissed for failure to exhaust. *Turner v. State of Tennessee*, NO. 2:98-CV-153 (E.D.Tenn. May 19, 1998). Petitioner now applies for a federal writ of habeas corpus, asserting, as grounds for relief, an invalid confession, a due process violation, insufficiency of evidence (assault conviction), an improper jury instruction, an evidentiary error, excessive punishment, ineffective assistance of counsel, and the denial of a DNA expert and DNA testing.

## II.  **Factual Background**

According to the proof presented at trial, on July 30, 1996, a twelve-year-old girl, MK, and her ten-year old sister, RK, were visiting their mother in the two-bedroom mobile home she shared with her husband, the petitioner, and their two sons.[1] MK slept on a sofa in the living room and RK with her mother and petitioner in one of the bedrooms.  In the wee hours of the morning, RK awoke and found herself on petitioner's side of the bed, with his hand on her naval and her underwear pulled down to her knees.  She quickly rose from the bed, pulled up her underwear, went to the bathroom, and then went into the living room to lie down beside her sister on the sofa. Petitioner followed her into the living room and instructed her to go back to the

---

[1]    The recitation of facts is taken from the state court opinion on direct review.  *State v. Turner*, 1999 WL 817690, *1-*2 (Tenn.Crim.App. 1999). The state court identified the minor victims by initials, as will this Court.

bedroom. RK obeyed and fell asleep immediately.

In the meantime, MK woke up and discovered that petitioner was lying on the sofa beside her. She attempted to get up, but petitioner pulled her back down, telling her that "it was all right." However, he permitted her to go to the bathroom when she insisted. MK stayed in the bathroom for awhile before petitioner entered and told her that she was "pretty" and "a bunch of other stuff." She demanded that he leave and he complied, returning to his bedroom. She went back to the sofa and attempted to go back to sleep.

Soon, petitioner returned to the sofa and tried to gag MK with a bandana. She struggled and he offered her twenty-five dollars for her cooperation. She refused, whereupon petitioner put a towel over her mouth, ripped off her underwear, and forced her to engage in sexual intercourse. When she continued to struggle, petitioner threatened to kill everyone in the mobile home. After the rape, petitioner retrieved his clothing from the bedroom and told her to help him put the clothes into garbage bags and carry them to his car. As he left, petitioner told MK that it was her fault that he would never see his sons again.

When her mother awakened, MK reported the rape to her and her mother called the police. Both girls were taken to the hospital, where they were examined by an emergency room physician. The doctor saw no signs of sexual assault with respect to RK. However, when he performed a pelvic examination of MK, he observed that her vagina was reddened, that its entrance was bruised, and what appeared to be semen in the vaginal area—conditions that were consistent with recent sexual intercourse.

Later tests established that the DNA extracted from the semen matched petitioner's DNA.

## III. **Discussion**

The discussion is divided into three sections: non-cognizable claims, applicable law, and grounds for relief.

A.   **Non-Cognizable Claims.**

These claims have been combined because they all involve the same subject matter—petitioner's collateral proceedings in state court.

1. Denial of DNA Expert [Pet., Ground 8].
2. Denial of DNA Testing [*Id.*, Ground 9].
3. Denial of Expert Assistance [*Id.*, Ground 10].

Petitioner alleges that he was denied a DNA expert, DNA testing and unspecified expert assistance during his DNA post-conviction proceedings. However, there is no constitutional requirement that states provide an appeal process for criminal defendants seeking to review alleged trial court errors. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Nor is there a constitutional duty to provide for post-conviction relief since "[p]ostconviction relief is even further removed from the criminal trial than is discretionary direct review," as "[i]t is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (citation omitted). Thus, petitioner's assertions with regard to the post-conviction court's rulings are not cognizable habeas corpus claims. *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (finding that claims involving constitutional

violations during post-conviction proceedings did not relate to a prisoner's detention and, therefore, were not cognizable under § 2254); *see also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.") (citing, *inter alia*, *Kirby*, 794 F.2d at 247).

B.  **Applicable Law.**

1.  **Procedural Default Doctrine.**

Under 28 U.S.C. § 2254(b) (1), a state prisoner's petition for a writ of habeas corpus will not be granted unless he has exhausted his available state court remedies.  Exhaustion requires that a petitioner fairly present his federal claim first to the state courts, in a procedural context where a merits review is likely.  *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  A petitioner who has failed in this regard and who is now barred by a state procedural rule from returning with his claim to those courts, has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and, thus, is deemed to have exhausted his state remedies, but to have done so by way of a procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  A petitioner who has actually presented his federal claim to the state courts, which have declined to address it due to his failure to meet a state procedural requirement, has committed a procedural default as well.  *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on appeal); *Reed v. Ross,* 468 U.S. 1 (1984) (same).

For all types of procedural default, federal review is foreclosed, unless the habeas petitioner can show cause to excuse his failure to comply with the state

procedural rule and actual prejudice resulting from the alleged constitutional violation. *Coleman,* 501 U.S. at 732. Cause can be shown where interference by state officials rendered compliance with the rule impracticable, where counsel gave ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim was not reasonably available at the time of the procedural default. *Carrier,* 477 U.S. at 488 and 492. To show prejudice, a petitioner must establish that the errors "worked to his **actual** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

2. **Review of Adjudicated Claims.**

The standard which controls the review of adjudicated claims is found in 28 U.S.C. 2254(d). Under this standard, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Also, a state court's findings of fact are presumed to be accurate and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *Spisak v. Mitchell*, 465 F.3d 684, 691 (6th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)).

With these principles in mind, the Court turns to the remaining claims

which respondent contends do not justify issuance of the writ because they have been procedurally defaulted and/or adjudicated by the state courts and, therefore, subject to the limitations dictated by 28 U.S.C. § 2254(d).

C. **The Grounds for Relief.**

1. **Suppression Claim.**

Petitioner confessed the rape to law enforcement officials and later moved to suppress his confession. The motion was denied and the statement was admitted at trial. Petitioner now claims that its admission was constitutional error.

a. *Procedural Default Argument.*

Respondent argues that petitioner did not present this ground to the state courts on a constitutional basis, since he did not cite to provisions of the Constitution or to cases that might have alerted the state court to the alleged federal nature of the claim. Respondent further argues that the claim cannot now be presented to those courts, given that all state remedies are foreclosed to petitioner, and that this constitutes a procedural default.

Petitioner counters that he did not commit a procedural default, insisting that he, in fact, presented the claim in a federal context and also that the state courts considered it in that light. The Court agrees with petitioner.

A claim is fairly presented, *inter alia*, by expressing it in terms so specific as to allege a denial of a distinct constitutional right or by supporting it with facts "well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). In his

brief on direct appeal, petitioner phrased this ground in such a manner as to signal to the state courts that he was claiming that his *Miranda* waiver and subsequent confession were invalid and also by constructing this ground on a pattern of facts well within the mainstream of the law concerning the validity of *Miranda* waivers. Further, the Tennessee Court of Criminal Appeals read petitioner's submission as advancing a claim that his confession violated the rule in *Miranda v. Arizona*, 384 U.S. 436 (1966), and, more important, it resolved that very claim. A petitioner meets the fair presentation requirement if the state court rules on the merits of his claim. *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

In this case, the Court concludes that petitioner exhausted his claim by fairly presenting it to the state courts. And because petitioner fairly presented the claim to the state courts, he did not procedurally default it. Finally, because the claim was ruled upon by the state courts, it will be reviewed under the "adjudicated claims" standard in § 2254(d) and (e).

b. *Deferential Review Argument.*

The day after the rape, petitioner was located at Woodridge, a psychiatric hospital, and taken to the Sullivan County Sheriff's Department, where he confessed. In his statement, he acknowledged that he had engaged in sexual intercourse with MK, but denied touching or sexually assaulting her younger sister. He also related that, before his admission to the mental hospital, he had undergone blackouts and had been controlled by someone named "Jack," who had directed his actions and forced him to

watch pornographic movies. Thereafter, petitioner was booked into the jail and placed on a suicide watch. Petitioner sought to suppress this statement, but it was introduced at trial, over his objection. Petitioner now challenges its admission as unconstitutional, pointing to the record, which, he maintains, encompasses a great deal of evidence showing that he was incompetent at the time of the statement and, thus, incapable of understanding and knowingly waiving his rights.

The rule articulated in *Miranda v. Arizona*, 384 U.S. 436 (1966), requires law enforcement officers to advise a suspect during custodial interrogation that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.,* at 444. The remedy for a *Miranda* violation is the exclusion, during the prosecution's case-in-chief, of the statement stemming from the custodial interrogation. *Id.*, 384 U.S. at 444.

However, a defendant validly may waive his constitutional rights if he does so voluntarily, knowingly, and intelligently. *Ibid.* To be voluntary, the waiver must be a free and deliberate choice, made with full consciousness of the nature of the right being waived and the consequences attendant to the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Thus, to be valid the waiver must be: 1) "the product of a free and deliberate choice, rather than intimidation, coercion or deception" [the voluntary component], ***and*** 2) "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" [the knowing and intelligent component]. *Id.* While both components of the waiver

inquiry must be present to find a valid *Miranda* waiver, petitioner does not allege that his waiver was not voluntary, only that it was unknowing.

Petitioner's claim that his confession was inadmissible because he was incompetent to waive his self-incrimination right is governed by *Miranda*. *See Dickerson v. United States*, 530 U.S. 428, 432 (2000) (holding that *Miranda* and its progeny "govern the admissibility of statements made during custodial interrogation in both state and federal courts"). When the claim was presented to the state courts, those courts cited to *Miranda* and to other cases involving the validity of a waiver of *Miranda* rights as the applicable law. *State v. Turner*, No. 03C01-9805-CR-00176, 1999 WL 817690, *8 (Tenn. Crim. App. Oct. 6, 1999), *perm. app. denied* (Tenn. 2000). There is no question that the trial court and the Tennessee Court of Criminal Appeals identified *Miranda*, among other cases, as containing the legal principles for resolution of the claim. Thus, those state-court decisions are not contrary to the well established governing law in Supreme Court cases.

The question is whether the state courts unreasonably applied those principles to the facts of the petitioner's case. They did not.

At the hearing on petitioner's motion to suppress the confession, the officer to whom he gave the statement testified that, when petitioner arrived at the Detention Center, she advised petitioner that he was being charged with rape of a child and read him his *Miranda* rights, which he indicated that he understood. Thereafter, he signed an "Advise of Rights" form and a written waiver of his rights. The approximately 3-hour interview followed, during which petitioner agreed to give a

statement, never indicating that he wished to see an attorney or to terminate the interview, appearing "to be okay," alert, appropriately responsive to questions, and not under the influence of drugs or alcohol. However, petitioner did refer to "Jack," who had forced him to engage in deviant conduct.

Petitioner's father also testified at the hearing, relating that, on the day of the rape, his son had telephoned him from a gas station and told him that he was being accused of raping his stepdaughter and that he wanted to leave town. After the call ended, both parents met their son at the gas station. Petitioner seemed disoriented and talked of committing suicide. They took petitioner to the Medical Center in a nearby town. His father described his son's speech as "disjointed" and irrational." Later that day, petitioner was admitted to the psychiatric hospital. His father visited him the next morning and saw no change in his son's condition. Petitioner believed that he was being chased by a person named "Jack," whom his father had never heard mentioned before by his son, despite their close relationship. Petitioner recognized his parents and was able to respond to them.

Also in evidence at the hearing was a copy of a letter, informing the trial court that a clinical psychologist and a psychological examiner had evaluated petitioner and had found that he was competent to stand trial and that he could not sustain an insanity defense.

The trial court reviewed this testimony and other proof, commenting that "it is interesting that all of these years, his father never heard about this person named Jack until after the defendant is alleged to have committed this crime, and then, there

is a person named Jack who makes him do, apparently, almost every bad or evil thing in his life; and he doesn't even really take responsibility, I guess, for drinking." *Turner*, 1999 WL 817690, at *4. The state court then concluded that "other than just blaming what he does on somebody else, ... it does appear that he did make a knowing and intelligent waiver of his rights and he gave the statement freely and knowingly." *Id.*

When this issue was carried to the state appellate court, that court observed that two experts had performed a mental examination on petitioner, upon his own motion, and had concluded that he was competent to stand trial and that he was sane at the time of the offense. The appellate court further noted that the only proof that petitioner was psychotic consisted, essentially, of his self-serving statements made after the offenses and his father's "somewhat contradictory observations." *State v. Turner*, 1999 WL 817690, at *6. The Court of Criminal Appeals related that, generally, mental illness in and of itself is insufficient to invalidate a *Miranda* waiver, which is found, under the "totality of circumstances" test, to have been made knowingly and intelligently. The state appeals court, while acknowledging petitioner's references to past delusions, determined that the record showed that he was competent to waive his *Miranda* rights and, thereafter, declined to grant relief.

Notwithstanding petitioner's unsupported allegation to the contrary, the state courts' decisions (i.e., that, under the totality of circumstances, petitioner had intelligently and knowingly waived his rights because he comprehended the nature of the rights he was waiving and the attendant consequences and that his subsequent

confession was admissible) did not result from an unreasonable application of the relevant principles governing the validity of confessions and *Miranda* waivers. A writ of habeas corpus will not issue with respect to this claim.

2. **Inadequate Notice.**

Petitioner charges that, on the day of the trial, the State's attorney amended the indictment from aggravated rape to rape of a child, a crime with different elements from those in an aggravated rape. Petitioner sought a continuance to prepare his defense to the modified indictment, but his request was denied and he was forced to go to trial that very day. He now claims that the alteration deprived him of "fair notice" and, thereby, prevented him from preparing adequately his defense. Respondent first maintains that the claim has been procedurally defaulted.

a. *Procedural Default Argument*.

Respondent contends that this claim was procedurally defaulted based on the following reasoning. To the extent that petitioner's claim can be construed as a violation of his Fifth Amendment right to an indictment or his Sixth Amendment right to be informed of the nature of the case against him, he did not fairly present his claim to the state courts because he did not specifically assert that the modified indictment worked a violation of either amendment. Granted, petitioner cited to a federal case involving a district court's denial of a request to amend an indictment, but this reference was insufficient to apprise the state court of a constitutional claim. Respondent appears to be arguing that the claim was not exhausted because it was not *identified* as a Fifth or Sixth Amendment infringement.

Petitioner, of course, takes the opposite position, insisting that his citation to a federal case was sufficient to place the state courts on notice that he was raising a "federal question."

Petitioner filed a single-spaced, twenty-two-page typewritten brief on direct appeal, devoting some four pages to his challenge to the amended indictment. The heading of the claim read:

> II. The Trial Court erred as a matter of law in allowing the charge for which the Appellant was indicted (aggravated rape) to be amended on the day of trial to a charge of rape of a child, without granting the Appellant's Motion for a Continuance." [Doc. 6, Addendum No. 1, Pet'r's Brf. at 12].

The text which followed is replete with citations to state law and with arguments attacking the non-consensual amendment, the denial of a continuance afterward, and the failure to recommit the revised indictment to the grand jury—arguments focusing mainly on state law errors. There is a single citation to a federal case, one from this district. Petitioner explained the citation, stating:

> In some cases, Courts have denied the state's request for a belated amendment to the indictment. For example, in *United States v. Randolph*, [542 F. Supp. 11 (E.D.Tenn. 1982),] the Court denied prosecutors' request to amend an indictment by changing the figure 1981 to 1980, the prosecutor claimed the error in the date was only a typographical error, where the prosecutor submitted no sufficient affidavit supporting the motion and the defendant might be hampered in using a double jeopardy defense. [Doc. 6, Addendum No. 1, Pet'r's Brf. at 15].

The facts in *Randolph* are quite similar to the facts in petitioner's case—both cases involved an error in the charging instrument, described by prosecutors as a typographical error. True, in resolving the issue, the district court

discussed the Fifth Amendment right to an indictment by a grand jury [which, as respondent correctly points out, does not apply to the states], but that court also adverted to the right conferred by the Sixth Amendment "to be informed of the nature and cause of the accusation." *Id.*, at 12.

Also in his brief, petitioner claimed that the original indictment failed to give him notice of the charges against him and that this constituted a fundamental denial of his right to due process. Though petitioner alleged that the lack of notice was a due process violation, as he continues to do in his federal petition, a criminal accused's right to "fair notice" is rooted in the Sixth Amendment, as applied to the states through the Fourteenth Amendment. And it is worth noting that the state prosecutors, in responding to the brief, specifically identified this ground as founded on a violation of the Sixth Amendment right to know "the nature and cause of the accusation." [Addendum No. 2, State's Brf. at 7 (citing, *inter alia*, U.S. Const. amend. VI and *State v. Trusty*, 919 S.W.2d 305, 309 (Tenn. 1996) for the principle that a criminal accused has a fundamental right to fair and reasonable notice of the charge) (*overruled on other grounds by State v. Dominy*, 6 S.W.3d 472 (Tenn. 1999))].

To give the state courts a fair opportunity to pass on a constitutional claim, "[t]he trappings of a federal claim must be likely to put a reasonable jurist on notice of the claim." *Casella v. Clemons*, 207 F.3d 18, 21 (1st Cir. 2000). Petitioner can satisfy the "fair presentation" requirement by relying on federal cases employing the constitutional analysis in question or, as previously stated, by expressing the claim in terms so specific as to allege a denial of a distinct constitutional right or supporting

it with facts "well within the mainstream of constitutional law." *McMeans*, 228 F.3d. at 681.

Though petitioner's argument was not crafted as precisely as it could have been, in this Court's opinion, he fairly presented the state courts with the substance of his fair-notice claim and, thereby, exhausted it. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (finding exhaustion where petitioner alleged, in substance, the infringement of the right secured by the Constitution, though he did not specify the constitutional amendment by number). The claim has not been procedurally defaulted and is eligible for habeas review.

b) *"Limited Review" Argument.*

Alternatively, respondent insists that, if petitioner is deemed to be alleging a violation of the Fifth Amendment guarantee of an indictment, then the state court's ruling (i.e., that the amended indictment did not change the substantive elements, but merely corrected an incorrect statutory citation) is not contrary to or an unreasonable application of Supreme Court precedent.

Though there is no constitutional right to be charged in an indictment, *id.*, no matter what the method a state selects to charge a criminal offense, the defendant must receive "notice of the specific charge." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (holding that "notice of the specific charge . . . [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal"). And, the notice must be *adequate* so as to enable the criminal accused to formulate a defense to the charge. *Koontz*, 731 F.2d at 369. Describing the offense "with some precision

and certainty ... as will enable a presumptively innocent man to prepare for trial" will satisfy the constitutional requirement of fair notice. *Id.* A belated modification in an indictment could prejudice the defense and, if the prejudice is excessive, could also violate due process. *Id.* at 369-70. However, "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus." *Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986).

Count One of the original presentment reads:

Clayton E. Turner, II on or about July 30, 1996 ... did unlawfully, feloniously and knowingly sexually penetrate [MK], a person less than thirteen years of age, in violation of T. C. A. 39-13-501."

The cited statute, i.e., Tenn. Code. Ann. § 39-13-501, sets out the offense of aggravated rape. Prior to 1992, a subdivision of this statute contained a sentencing enhancement for rape, where the victim was a child less than 13-years old. In 1992, the subdivision was moved to Tenn. Code Ann. § 39-13-522 (1996) and became a separate offense of rape of a child. Petitioner's offense occurred in 1996 and, therefore, Tenn. Code Ann. § 39-13-501, as cited in the original presentment, did not contain the offense alleged therein. Five days prior to trial, the prosecutors, recognizing the mistake in the presentment, moved to amend it to reflect the correct statutory citation. The motion was granted on the day of trial.

This issue was carried to the Tennessee Court of Criminal Appeals, which first observed that the factual allegations in Count One charged petitioner with rape of a child, as set forth in Tenn. Code Ann.§ 39-13-522, not with aggravated rape, as

delineated in Tenn. Code Ann. § 39-13-502. Reasoning that a cursory inspection of the statute originally cited in the presentment would have alerted petitioner to the State's error and that the commentary to the aggravated rape statute would have directed him to the correct code section, the appellate court found that the modified presentment left the offense unchanged and only corrected a mistaken statutory citation of which petitioner "was surely aware." Finding that the alteration had not charged petitioner with a different offense or prejudiced his substantial rights, the state court concluded that the claim had no merit and, thereby, necessarily found that petitioner had received adequate notice of the charges he was facing.

The state court's finding that the allegations of fact in the presentment described the offense of rape of a child, and not the crime of aggravated rape, is a factual finding which can only be overcome with clear and convincing evidence to the contrary. No such rebuttal evidence has been offered and the Court deems the state court's factfindings to be correct.

A charging instrument will pass constitutional muster if it delineates the offense with sufficient precision so as to apprise the accused of the crime charged. *Koontz*, 731 F.2d at 369. The state-court decision (i.e., that the altered presentment did not charge a different crime and did not prejudice petitioner and its implicit decision as to "fair notice") must stand unless it is contrary to or an unreasonable application of the relevant Supreme Court precedent requiring "notice of the specific charge" or is based on unreasonable factual determinations. Because the state court decision was none of these things, petitioner is not entitled to habeas corpus relief.

3. **Insufficient Evidence of Assault**.

Petitioner was convicted of assault by offensive touching with respect RK, the younger sister of the rape victim, MK. He now claims that the evidence was insufficient to sustain his conviction. Respondent argues that the claim has been procedurally defaulted since petitioner failed to raise it in the state courts as a constitutional claim. Petitioner disagrees, insisting that he exhausted this ground in the state courts because the claim he raised on direct appeal (the trial court erred by failing to grant his motion for judgment of acquittal at the conclusion of the state's case) was reviewed under the constitutional standard for insufficient-evidence claims.

In petitioner's brief on direct appeal, petitioner argued that there was a lack of evidence to support the charge and that "even if the Trial Court had taken everything that [RK] testified as true, the State failed to make out a prima facie case for the offense of assault by harmful touching." [Addendum No. 1, Pet'r's Brf. at 16]. Petitioner supported his claim with argument, but offered no statutory or case citations.

The Court of Criminal Appeals began its analysis of the claim by citing to the standard of review for a Rule 29 motion under Tennessee law:

> A trial court must grant a motion for a judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offense. Tenn. R. Crim. P. 29. In making this determination, the trial court may not address the weight of the evidence, but must afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence. An appellate court applies the same standard as the trial court when resolving issues predicated upon the grant or denial of a motion for judgment of acquittal. *Turner*, 1999 WL 817690, at *10 (some internal citations omitted).

Only state statutes were cited by the state appellate court in disposing of

the alleged trial court error. This is not surprising since state law governs the resolution of a Rule 29 acquittal motion, based on a claim that the evidence is insufficient to make out a prima facie case of assault, under Tennessee's criminal statute. The state appeals court did not find error on the part of the trial court in the denial of the Rule 29 motion.

The issue was not presented by petitioner as a federal claim and this Court is unconvinced that the issue was resolved on constitutional grounds. Asserting in the state court that a trial court erred by denying a motion for judgment of acquittal does not exhaust a federal constitutional claim of insufficient evidence.

Alternatively, even if the claim was presented to or adjudicated by the state appellate court as a constitutional claim,[2] this would still not afford petitioner relief. To reiterate, habeas corpus relief cannot be granted on any claim adjudicated on the merits in state court unless the resulting state-court decision was contrary to, or involved an unreasonable application of, the relevant legal rule contained in Supreme Court cases or stemmed from an unreasonable factual determination in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

How, one may ask, can a state court decision which contains no Supreme Court case citation possibly be contrary to well-established federal law? Because the

___

[2] Citing to *Jackson* and to state law, the Court of Criminal Appeals has held that "[t]he standard for determining whether a trial court should have granted a motion for judgment of acquittal is whether, after considering the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt." *State v. Culp,* 891 S.W.2d 232, 235 (Tenn.Cr.App.,1994). The Court sees nothing in the state appellate court's opinion to establish that this standard was not applied in petitioner's case .

Supreme Court has found that, even if such a citation is absent, this does not defeat deferential review under § 2254(d). *See Early v. Packer*, 537 U.S. 3, 8 (2002) (To satisfy the "contrary to" component of § 2254(d), a state court need not cite to or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."). Thus, the state court's ruling can be examined under the "unreasonable application" prong of § 2254(d), but must not be upset unless an independent review of the record and the relevant principle in Supreme Court cases persuades this Court that the ruling contravenes or unreasonably applies that principle or results from an unreasonable factual determination in light of the evidence offered to the state court. *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

The logical starting point for an independent review of the law and relevant legal principle begins with the Supreme Court case governing insufficient-evidence claims. The controlling rule for resolution of a claim of insufficient evidence was enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). There, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*, at 319. Circumstantial evidence which convinces a rational jury of each element of the offense beyond a reasonable doubt is sufficient to sustain a conviction. *Ibid.* The evidence, however, need not be such as to exclude every reasonable hypothesis other than that of guilt. *Id.,* at 317 n. 9.

In disposing of the claim, the state appellate court observed that the trial

court, though granting the Rule 29 motion with respect to Count III's charge of aggravated sexual battery, had found that the proof would support the lesser included offense of assault and had charged the jury accordingly. This offense is defined in Tenn.Code.Ann. § 39-13-101(a)(3) (1997), as follows:

> A person commits assault who: ... Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Next, the state appeals court described the proof offered against petitioner at trial, which included evidence that, prior to the commission of the offense, petitioner had been having aberrant sexual impulses while watching pornographic films and that, on the morning of the offenses, RK had been asleep in the bed with her mother and petitioner, that she had awakened to find herself moved from her mother's side of the bed to petitioner's side, that her underwear had been pulled down to her knees, that petitioner was touching her stomach, and that a short time later, petitioner had gone into the living room and raped her sister. On this proof, the state appellate court determined that the evidence was legally sufficient to sustain a jury finding that petitioner had assaulted RK.

The above proof in the record shows the repositioning of a sleeping ten-year old from her mother's side of the bed to petitioner's—circumstantial evidence which would fairly support an inference that petitioner had moved her. There was testimony from RK that, when she awakened, her underwear was pulled down around her knees and petitioner was touching her abdomen. In this Court's opinion, this proof is sufficient to support a jury finding, beyond a reasonable doubt, that petitioner

had intentionally or knowingly caused physical contact [touching MK's stomach] which, under the circumstances [by inference, petitioner had moved her to his side of the bed and had pulled down her panties and, by direct evidence, shortly thereafter had raped her sister], would be regarded as extremely offensive or provocative by a reasonable person.

Therefore, the state court's disposition of the claim does not contravene or unreasonably apply *Jackson* and did not result from an unreasonable factual determination. Habeas corpus relief does not lie with respect to this claim.

4. **Jury Instruction [Flight]**.

In this claim, petitioner alleges that, over his objection, the jury was given a constitutionally impermissible instruction on "flight." More specifically, he contends that the only "flight" involved in his case was checking himself into a mental hospital in the same city where the alleged offense occurred. Also, he contends that law enforcement officials and the prosecutor involved in the case knew that he had checked himself into the facility. He maintains, therefore, that the flight instruction served only to inflame the jury and infect the entire trial to such an extent that his resulting conviction violates due process and renders the trial fundamentally unfair.

This claim too, according to respondent, is barred from habeas corpus review by petitioner's procedural default, which occurred when he failed to present the claim on a constitutional foundation to the state courts. Petitioner insists that he adequately presented a federal constitutional question to the courts of Tennessee.

Contrary to petitioner's assertion, the issue was offered in his brief on

direct appeal only as a violation of state law based on the absence of "evidence introduced at the trial which in any way gave support for the idea that the [petitioner] was fleeing from prosecution when he was admitted into the Hospital." [Addendum No. 1, Pet'r's Brf. at 16]. Additionally, the claim was adjudicated as a state law claim. The Court of Criminal Appeals found the instruction to be a correct statement of Tennessee law, justified by the evidence adduced at trial. Though petitioner alleges otherwise, the state courts addressed the claim which was raised and did not fail to resolve a federal question adequately submitted.

Therefore, because this habeas claim was not fairly presented to the state courts for consideration, it has been procedurally defaulted. Unless petitioner can show cause and prejudice, his procedural default bars this Court's review. Nothing has been offered by way of cause and, thus, federal review is now foreclosed.

5. **Evidentiary Ruling.**

Petitioner contends that there was proof that another individual had engaged in unlawful sexual relations with the victim one week prior to the offense for which he was convicted and [impliedly] that this proof could show that she consented to have sexual relations with him. He further contends that the trial court, relying on the state's rape shield statute, refused to admit this evidence and that this statute, which excludes such highly relevant evidence as was proffered in his defense, violates his right of confrontation and other rights.

Respondent's defense to the claim is that petitioner procedurally defaulted it and, alternatively, that the reviewing state court's decision that the trial

court committed no error in ruling as it did is not contrary to or an unreasonable application of the pertinent federal law.

As a preliminary matter, a state court's rulings on the admission of evidence are only cognizable as habeas corpus claims if they violate a defendant's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991). To succeed on a challenge to an evidentiary ruling, a petitioner must show that the ruling was so prejudicial that it deprived him of a fair trial. *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) ("Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."). Even evidence relevant to a defendant's defense can be excluded: "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged or otherwise inadmissible under standard rules of evidence." *Montana v. Engelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

This issue was presented to the Court of Criminal Appeals as a violation of a state evidentiary rule, Tenn. R. Evid. 412, at trial and sentencing. That reviewing court found that any claim regarding the exclusion of such evidence *at trial* had been waived. The state appellate court, noting that the record did not reflect whether the required Rule 412 hearing had been held when the issue arose, further found that, if a hearing *had been held*, the claim involving the exclusion of the evidence *at sentencing* was barred from consideration by petitioner's failure to submit a record of the proceedings wherein the trial court declined to admit the evidence.

That court also reasoned that, if a hearing *had not been held*, then, obviously, the error had not been highlighted for the trial court's attention and a trial court cannot commit an error by failing to consider a matter never presented to it. Finally, that court determined that evidence of the victim's past sexual history was not relevant to the issue of consent or to mitigation for the offenses of child rape and incest. This was so, the state court determined, because consent is not a defense to child rape or incest and the evidence of consent of the child would not have justified the action of the 28-year old defendant. The state appeals court decided that the issue had no merit.

The state appellate court, presented with the alleged violation of state law, understandably limited its analysis to the application of state law. Clearly, the state appellate court's finding of waiver constitutes a procedural default of any challenge to a pretrial or trial evidentiary ruling. As to the exclusion of the evidence at the sentencing, the Court of Criminal Appeals also found that the failure to submit the record of the Rule 412 proceedings barred consideration of the claim. Therefore, it appears that this claim is not cognizable and, alternatively, that federal review is barred by petitioner's procedural default.

Petitioner has another argument. Though the state appellate court's reasoning and its ensuing decision rests entirely on state law, petitioner maintains that he exhausted his confrontation claim by means of the last sentence in his discussion of the questioned evidentiary ruling in his direct appeal brief. The cited sentence reads:

> Rape shield statutes should not be used to exclude highly relevant evidence and violate the defendant's right of confrontation or other constitutional rights. *Bell v. Harrison*, 670 F.2d 656 (6th Cir. 1982).[3]   [Addendum No. 1, Pet'r's Brf. at 18].

If, indeed, petitioner's reference to rape shield statutes and his federal case citation satisfies the "fair presentation" requirement so as to avoid a procedural default, *see McMeans*, 228 F.3d at 681) (a claim is fairly presented if it relies on federal decisions employing constitutional analysis), he is entitled to the writ only if an independent review of the record and the relevant Supreme Court precedent leads this Court to conclude that the state court's disposition of the claim is at odds with § 2254(d)'s "adjudicated claims" standards. *Stewart v. Erwin*, 503 F.3d 488, 493-94 (6th Cir. 2007) (citing *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000)).

First of all, the state court held that it was unclear that Rule 412[4] even applied at sentencing because, by its own terms, the rule applied to "a criminal trial, preliminary hearing, deposition, or other proceeding in which a person is accused" and because, at the time it was invoked, petitioner was no longer a person accused, but a person convicted of an offense. And even if Rule 412 did apply at sentencing,

---

[3]   In *Harrison*, the Sixth Circuit found that Tennessee's rape shield law was not unconstitutional on its face or as applied since the statute requires a defendant to show relevance before subjecting a complaining witness to the highly embarrassing experience of exposing her sexual past to the public. However, the court also observed that the statute should not be used to exclude highly relevant evidence as to violate a defendant's constitutional rights, including the right of confrontation. *Id.* at 658.

[4]   In 1991, this rule replaced Tennessee's rape shield statute and "now governs the relevance of evidence regarding a rape complainant's sexual history." *State v. Brown*, 29 S.W.3d 427, 429 (Tenn. 2000).

the state appeals court found that it could not be utilized in petitioner's case because the rule only permitted, for the purpose of proving consent, evidence of the victim's prior sexual activity with the *defendant*, whereas petitioner wished to introduce proof of MK's previous sexual conduct with a *third person*.

Additionally, the intended evidence was not relevant to the issue of consent as a defense since, under Tennessee law, consent is not a defense to the charged offenses. Moreover, though consent, in some circumstances, could be employed to mitigate the crime, the state appellate court discounted the theory that "the twelve-year-old victim's consent would tend to excuse or justify the twenty-eight-year-old [petitioner]'s sexual advances." *Turner*, 1999 WL 817690, at *12 n.6.

The Court is convinced that the trial court's ruling on the admissibility of proof of the victim's sexual past did not "so perniciously affect the prosecution of [petitioner's] criminal case as to deny [him] the fundamental right to a fair trial." After examining the record and the controlling legal principles in Supreme Court cases, this Court finds that the state court's resolution of this claim was not an unreasonable application of the appropriate federal law. Habeas corpus relief is not warranted here.

6. **Excessive Sentence.**

Petitioner contends that the penalty imposed for his offenses was an effective sentence of 31 years—a sentence which must be served in its entirely before he will be eligible for any type of release. Petitioner alleges that he had no prior

28

convictions, a stable work and family history, and a reduced mental capacity, which significantly reduced his culpability for the offense.  He argues that, under the facts of his case, his sentence is so extreme as to be unjust and to constitute an infliction of cruel and unusual punishment.

Disagreeing with petitioner's assessment of his claim, respondent argues that the state court's decision with respect to the excessive sentence issue cannot be disturbed under the deferential review standards in § 2244(d).

This claim was carried to the Court of Criminal Appeals, which noted that the Supreme Court was in disagreement, as evidenced in *Harmelin v. Michigan*, 501 U.S. 997 (1991), as to the precise contours of the Eighth Amendment's guarantee of proportionality in a noncapital sentence, though a proportionality inquiry was required under state law.  The state appellate court then determined, apparently under the framework established by state law, that the sentences did not offend contemporary standards of decency and did not exceed what is necessary to accomplish a valid penological goal; that, aside from first degree murder, the rape of a child was society's most heinous crime; that the law proscribing incest reflects society's belief that incest destabilizes the family unit, which, in turn, threatens society's orderly functioning; and, that petitioner's sentences were authorized by statute and were reasonably related to Tennessee's legitimate interest in deterring the rape of children and prohibiting sexual activity between close relatives.  The state court concluded that neither the statutory mandate that a child rapist serve the entire sentence imposed or the 31-year sentence itself violated the Eighth Amendment.

The Eighth Amendment to the United States Constitution proscribes the infliction of cruel and unusual punishment and, though it does not require strict proportionality between an offense and its punishment, it does "forbid[] extreme sentences that are 'grossly disproportionate to the crime.'" *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991)). But, only in the "'exceedingly rare' and 'severe' case" will a comparison between the offense committed and the sentence imposed lead to an inference of gross disproportionality. *Id.*, at 1005 (opinion of Kennedy J.). Moreover, there is no constitutional right to individualized sentencing in non-capital cases, and indeed, states may impose mandatory sentencing without consideration of mitigating factors. *Id.* at 994-95.

When the sentence being attacked on Eighth Amendment grounds is not death, but a term of years, the "grossly disproportionate" principle is the only relevant clearly established law which lends itself to the "contrary to" or "unreasonable application" analysis. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). Because the state court cited to *Harmelin* in disposing of the claim and because it did not reach a different result on a set of materially indistinguishable facts, *see Williams v. Taylor*, 529 U.S. 362, 406 (2000), its resulting decision is not contrary to the Supreme Court precedent. But was that decision objectively unreasonable in its assessment that petitioner's 31-year sentence did not constitute cruel and unusual punishment?

While there is no clear and consistent rule as to what factors may indicate that a sentence is grossly disproportionate to the crime, *Harmelin,* 501 U.S. 996-98 (opinion of Kennedy, J), the Supreme Court has found that the Eighth Amendment

is not offended by a life sentence for a repeat felon for obtaining $120.75 by false pretenses. *Rommel v. Estelle*, 445 U.S. 263 (1980). Nor is it violated by a term of life without the possibility of parole for possession of over 650 grams of cocaine. *Harmelin*. Likewise, there is no such violation when, under a state's recidivism law, a sentence of 25 years to life is imposed for a conviction on grand theft (three golf clubs), *Ewing v. California*, 538 U.S. 11 (2003), or when a life-term is set for a conviction on two counts of petty theft ($150 worth of videotapes). *Lockyer*. And 40 years' imprisonment for possession of marijuana with intent to distribute and distribution of the marijuana does not amount to the infliction of cruel and unusual punishment. *Hutto v. Davis*, 454 U.S. 370 (1982).

Here, the state court determined that aside from murder, child sexual abuse is the most heinous crime that can be committed. *See, e.g., Coker v. Georgia*, 433 U.S. 584, 597 (1977) (observing, in a case involving a 16-year old victim, that "[s]hort of homicide, [rape] is the ultimate violation of self"). According to the state court, the statutes proscribing incestuous relationships were moored to the belief that incest undermines the family unit and threatens the order of society. *See Lockyer*, 538 U.S. at 76 ("[T]he governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle.") (citing to *Harmelin*, 501 U.S., at 998). Petitioner has not produced anything to suggest that his 31-years' imprisonment is grossly disproportionate to the grave crimes for which he was convicted. At any rate, petitioner has cited to no Supreme Court case, and the Court is unaware of one, indicating that the state court's rejection of the claim is

objectively unreasonable or based on an unreasonable determination of the facts. Thus, no writ will issue with respect to this claim.

7. **Ineffective Assistance.**

In petitioner's final claim, he contends that his two trial attorneys gave him ineffective assistance in four instances. Respondent argues that the claim was adjudicated in state court and that the resulting decision cannot be overturned, given the limitations on habeas corpus review in § 2254(d). Petitioner differs, suggesting that the state court's disposition of his claim is contrary to the controlling legal rule in a Supreme Court case.

The Tennessee Court of Criminal Appeals reviewed petitioner's post-conviction claim regarding the representation rendered him by his trial counsel—one of whom was deceased at the time of the hearing. It reviewed the facts adduced at trial and the testimony offered at the evidentiary hearing, concluding that there was no merit to any of the four alleged trial attorney errors.

The first alleged error was his lawyers' failure to submit evidence at the pretrial suppression hearing to support that petitioner lacked the mental capacity to waive his rights voluntarily and to give a knowing and voluntary statement. The omitted evidence, according to petitioner, consisted of proof of his diagnosis and treatment and the medications he was prescribed at Woodridge immediately following the offenses.

When this issue was brought up on post-conviction appeal, the state appeals court observed that the discharge summary from the mental facility did not

indicate that petitioner was either given or prescribed any medications at the time he left the facility.  That court also pointed out that there was testimony indicating that one of the lawyers had sent for and reviewed petitioner's medical records, including those from Woodridge.  Recounting that the trial court had determined that the records would have reinforced the conclusion that petitioner was capable of knowingly and voluntarily waiving his rights and giving his statement and that petitioner's surviving lawyer had testified that there was nothing else to indicate that his client had a prior history of mental illness, the Court of Criminal Appeals found no deficiency of performance in counsel's decision not to submit the records.  Nor had prejudice been shown since petitioner had not demonstrated that the records contained anything beneficial to him.

Counsel's next claimed shortcoming is their failure to allow petitioner to testify on his own behalf during trial. The state appeals court addressed this illustration of alleged ineffective assistance by pointing out that his attorney had testified at the post-conviction hearing that petitioner, following a meeting between them, had heeded counsel's advice and  had agreed that it was in his best interest not to testify.  Counsel further stated that his client had never expressed a desire to testify, and that, had he done so, he would have been called as a witness. The trial court, finding counsel's testimony more credible than petitioner's, concluded that petitioner had not been denied his right to testify and that there had been no ineffective assistance with respect to this issue—a conclusion with which the appellate court did not disagree.

The third alleged attorney error is counsel's failure to explore adequately possible defenses, including medical, psychiatric or psychological proof that may have been "exculpatory or could have exonerated" petitioner. When this claimed error was examined on appeal, the state court reasoned that, though petitioner maintained that his lawyers should have pursued a possible mental defense, specifically insanity, he had failed to show deficient performance, since they had sought and obtained a mental examination of petitioner, the results of which were that an insanity defense was not viable. And he had also failed to show prejudice, since he had not demonstrated that a different opinion would have ensued from a second psychological evaluation.

The Court of Criminal Appeals also evaluated petitioner's related contention that his attorneys gave him ineffective assistance by failing to pursue a medical defense, constructed on the genital herpes from which petitioner claimed to have suffered at the time of the rape. No deficiency of performance had been shown, according to the state appeals court, given his attorney's testimony at the post-conviction hearing that there was no information in his files showing that his client had herpes or that he had ever been treated for it and that petitioner had not so advised him. Moreover, the medical records from the mental hospital disclosed that, during petitioner's physical examination the morning of the offenses, he had denied having any skin changes which would have indicated that he had a sexually transmitted disease.

There was no prejudice in connection with his counsel's alleged failure

since petitioner had not submitted proof, such as medical records or testimony, to corroborate his testimony at the evidentiary hearing that he had the herpes at the time of the rape, and since he had not shown that, even if he did have herpes, the victim necessarily would have contracted the disease.

The fourth and final example of ineffectiveness petitioner offered to the state courts was counsel's failure to explore and present adequately at trial the alleged victim's prior sexual conduct, which he claimed would have been relevant to rebut or explain scientific or medical evidence and to prove or explain the source of semen. The Court of Criminal Appeals first pointed out  the state's rape shield rule, which, with few exceptions, prohibits the admission of evidence of specific instances of such conduct in sex offense cases.  It then reviewed  petitioner's testimony at the post-conviction hearing that MK had "messed with her cousin" a few days before the instant offense and that this conduct had resulted in the cousin's conviction for sexual battery.  Observing that petitioner had not shown that the sexual battery included ejaculation, so as to explain the source of semen, the state appellate court found that MK's past sexual conduct was irrelevant and inadmissible under the rape shield rule. This claim was rejected based on petitioner's failure to show prejudice.

The relevant legal rule governing a claim of ineffective assistance is found in *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish such a claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.* at 687.  A reviewing court's scrutiny of counsel's performance is highly

deferential. *Id*. at 694. To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 688, 693-94. To show prejudice, a petitioner must demonstrate that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different *Id.* at 694. A finding of no prejudice provides an adequate ground for rejecting an ineffective assistance of counsel claim, even if a deficient performance is assumed. *Id.* at 687.

In considering petitioner's claims, the Tennessee Court of Criminal Appeals, as did the post-conviction court, cited to *Strickland*, as well as to *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)—a case which holds that a petitioner who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. Since *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court. Thus, once again, the Court must determine whether the state court unreasonably applied *Strickland* in deciding that there was no deficiency of performance and/or no resulting prejudice. It did not.

The factual determinations made by the state appellate court based on its review of the record are entitled to deference and, absent any clear and convincing evidence to the contrary, will be presumed correct. *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)). Petitioner

has offered no such evidence. Given the state court's findings of fact as to the claimed attorney errors, as well as its reasoning—all of which support its conclusions, the state court's rejection of the claim was not based on an unreasonable factual determination in light of the evidence or an unreasonable application of *Strickland*. Therefore, petitioner is not due any relief on this claim.

## IV. Conclusion

For the above reasons, this petition will be **DENIED** and the case will be **DISMISSED**.

## V. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that many of petitioner's claims were procedurally defaulted and that he has not made a sufficient showing of cause and prejudice to overcome this obstacle. The Court also found that the claims which were adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably

determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:


 s/ J. Ronnie Greer
J. RONNIE GREER
UNITED STATES DISTRICT JUDGE